**WENG ENTERPRISES, INC., Appellant,**

v.

**EMBASSY WORLD TRAVEL, INC., William E. Frank, and Dorothy M. Frank, Appellees.**

**No. 01–91–00870–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 30, 1992.

Rehearing Denied Aug. 26, 1992.

Herbert Gee, Houston, for appellant.

Chris A. Spofford, Houston, for appellees.

Before OLIVER-PARROTT, C.J., and DUNN and WILSON, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

This is an appeal from a take-nothing judgment in a breach of contract action brought by appellant, Weng Enterprises, Inc. In two points of error, appellant argues the trial court erred in not allowing two fact witnesses to testify. Appellees, Embassy World Travel, Inc., William E. Frank, and Dorothy M. Frank, asserts three cross-points and argues the trial court erred in denying recovery of attorney's fees as provided for in the contract and in denying appellee a trial by jury in its counterclaim for "contingent consideration." Appellee also argues the trial

court erred in entering a take-nothing judgment in its counterclaim because the judgment is against the great weight and preponderance of the evidence. We affirm in part and reverse and render in part.

## Background

In January of 1986, appellant, Weng Enterprises, Inc. (Weng Enterprises), entered into a written agreement to purchase the corporate assets of appellee, Embassy World Travel, Inc. (Embassy World).[1] As part of the $28,000 consideration for the purchase of the business, Weng Enterprises paid Embassy World $18,000. Under the terms of the agreement, the balance of $10,000 was to be paid on the date of closing. Upon closing, Embassy World agreed to deliver to Weng Enterprises a bill of sale for all the assets being purchased. Closing was contingent upon the transfer of ownership being approved by both the Airline Reporting Corporation (ARC) and the International Airlines Travel Agency Network (IATAN), as well as the consent of the lessors to the assumption by Weng Enterprises of the leases of the office space and computer equipment. Under the terms of the agreement, Weng Enterprises was bound to purchase the travel agency subject only to these conditions. The agreement also provided that closing would occur no later than August 20, 1986. The agreement contained the following "termination and default" clause providing Weng Enterprises with certain rights if closing did not occur:

> If this transaction is not closed because of (a) failure to receive the approval of the transfer from ARC and IATAN prior to August 20, 1986, or (b) failure to obtain consent to the assumption of [Weng Enterprises] of the leases on the office space and the computerized equipment, or (c) other matters (not including default by [Embassy World]) beyond control of [Weng Enterprises], [Embassy World] shall retain the sum of $3,000 out of the consideration theretofore paid by [Embassy World], the balance of such consid-

---

1. Under the provisions of the agreement, William E. Frank and Dorothy M. Frank as shareholders of Embassy World Travel, Inc. are per-

sonally liable for damages resulting from the breach of the agreement.

eration shall be refunded to [Weng Enterprises] within 15 days of receipt of written notice of such disapproval, and the parties shall have no further obligation with each other.

According to the pleadings, Weng Enterprises did not receive approval from IATAN prior to August 20 and was unable to secure approval for its lease arrangements. Thus, pursuant to the termination provision noted above, it made a written demand for a refund of $15,000. In response to Embassy World's failure to respond to the written demand, Weng Enterprise brought a breach of contract action seeking to terminate the agreement and recover the $15,000.

At trial, Weng Enterprises called Keng Foow Chen, the vice-president of Weng Enterprises, and William E. Frank, a codefendant, to testify. Embassy World objected to each witness on the same ground; that Weng Enterprises had failed to respond to interrogatories and therefore, had not revealed that these were persons with knowledge of relevant facts. The trial court did not allow either witness to testify because Weng Enterprises did not show good cause for its failure to respond. After counsel for Weng Enterprises explained to the trial court that Chen and Frank were the only witnesses they intended to call, it rested its case-in-chief. After Weng Enterprises rested, Embassy World moved for a directed verdict, which the trial court granted. The trial court entered a take-nothing judgment against Weng Enterprises. Weng Enterprises is now appealing the trial court's exclusion of the witnesses.

At trial, Embassy World sought to recover attorney's fees incurred in its defense of Weng Enterprise's breach of contract action. Embassy World argued that the agreement provided for the recovery of attorney's fees by the prevailing party in any lawsuit brought for the enforcement of the agreement. Thus, it was entitled to recover $4,367.25 of attorney's fees and costs it incurred in its defense. The trial court held that Embassy World was not entitled to recover attorney's fees for the defense of a lawsuit suit.

Embassy World also filed a counterclaim asserting that it was entitled to recover $4,000 in "contingent consideration" under the terms of the agreement. According to Embassy World, the agreement provided that if Weng Enterprises earned in excess of $200,000 in net sales, between the time period it began operations and the date of closing, Embassy World would be entitled to $4,000 as additional consideration for the purchase of the agency. The trial court found the agreement had not closed and thus Embassy World was not entitled to recover under the terms of the agreement. Embassy World brings three cross-points that are detailed below.

Weng Enterprises

■ In its first and second points of error, Weng Enterprises argues the trial court abused its discretion by precluding Chen and Frank from testifying because good cause was shown for its failure to respond to interrogatories propounded by Embassy World.[2]

■ Once a litigant proves that its opponent did not list a witness in response to interrogatories, the sanction is automatic—exclusion of the evidence. *Sharp v. Broadway Nat'l Bank*, 784 S.W.2d 669, 671 (Tex.1990); *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex.1986). To escape the automatic sanction, the party who calls the unidentified witness must show good cause for failing to respond and good cause must be shown in the record. *Sharp*, 784 S.W.2d at 671; *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 395 (Tex.1989); TEX.R.CIV.P. 215(5). The trial court has discretion to determine whether the offering party has met its burden of showing good cause to admit the testimony, but the trial court has no discretion to admit testimony excluded by TEX.R.CIV.P. 215(5) without a showing of good cause. *Alvarado v. Farah Manufacturing Co. Inc.*, 830 S.W.2d 911, 913–914 (Tex.1992).

---

**2.** The interrogatory stated: "state the name, address, telephone number of each and every person who has knowledge of relevant facts pertaining to this lawsuit."

The burden was on Weng Enterprises to show good cause for not responding to Embassy World's interrogatories. *Gee*, 765 S.W.2d at 395; Tex.R.Civ.P. 215(5). Weng Enterprises showing of good cause for failing to respond was to assert that the parties had a scheduled deposition and that it was Weng Enterprises' understanding that the "matters covered by the interrogatories would be covered at the scheduled deposition." [3]

In *Sharp*, however, the supreme court held that an unidentified witness could not testify, even though his deposition has been taken. *Sharp*, 784 S.W.2d at 669. The absence of surprise, unfairness, or ambush is not enough to satisfy show good cause. *Id.* at 671. A party is entitled to prepare for trial assured that an unidentified witness will not testify. *Id.* The fact that it might have been understood that the matters covered in the interrogatories were to be covered in the deposition does not excuse the failure to respond to a proper discovery request. The identification of witnesses in response to discovery must be in writing. This avoids the inevitable disputes over who said what when. *Id.* The sanction for failing to respond to interrogatories is automatic exclusion of the unidentified witnesses' testimony. *Morrow*, 714 S.W.2d at 298. Thus, with respect to the unidentified witness Chen, Weng Enterprises failed to show good cause. Absent a showing of good cause, the trial court had no discretion to allow Chen to testify. *Alvarado* at 913–914.

With respect to the unidentified witness Frank, Weng Enterprises argues that a distinction should be made because Frank is a party to the lawsuit. Weng Enterprises called Frank, an adverse party, to testify, and Frank objected to his own testimony. This is not a case where the party called himself to testify, and the opposing party objects. This distinction was recognized in *National Union Fire Ins. Co. v. Wyar*, 821 S.W.2d 291, 293 (Tex.App.—Houston [1st Dist.] 1991, no writ), where this Court held the trial court abused its discretion in not allowing a unidentified witness, who was also a party to the lawsuit, to testify. This Court limited its holding, noting that it was not holding that "every party in every case can always present fact testimony without naming itself in answer to discovery." *Id.* at 294. Because it was a case where there was only one party plaintiff and the plaintiff was an individual, this Court considered lack of surprise a compelling factor favoring the admission of the testimony. *Id.*

■ Consistent with this Court's holding in *National*, we find the trial court abused its discretion by precluding Frank from testifying. However, we find that Weng Enterprises failed to preserve error. Rule 103(a)(2) of the Texas Rules of Civil Evidence provides that error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected, *and* the substance of the evidence was made known to the court by offer. In *National*, we were able to review the testimony of the unidentified witnesses because it had been preserved by way of a bill of exceptions. This is not the case here. There being no other evidence or testimony presented by Weng Enterprises, the trial court granted Embassy World's motion for directed verdict. In the absence of a bill of exception or offer of proof, this Court has no basis for reviewing a contention that the trial court committed reversible error in excluding the testimony of Frank. *See McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 187 (Tex. 1984), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985); *Martinez v. RV Tool, Inc.*, 737 S.W.2d 17, 18 (Tex.App.—El Paso 1987), writ denied, 747 S.W.2d 379 (Tex.1988) (court noted that the party did not make a bill of exceptions to preserve the testimony of the excluded witness as one of the reasons to affirm).

Weng Enterprises' first and second points of error are overruled.

Embassy World's cross points

In three cross-points of error, Embassy World argues the trial court erred in: (1) denying its request for a trial by jury; (2)

---

**3.** The deposition was taken before trial as scheduled.

denying its claim for attorney's fees; and (3) denying its claim for the "contingent consideration" as provided for in the agreement because it is against the great weight and preponderance of the evidence.

### Right to trial by jury

■ In its second cross-point, Embassy World asserts the trial court abused its discretion in denying its request for a jury trial. The record reflects that the case had previously been placed on the trial court's dismissal docket. On February 13, 1991, the case was certified for trial on the nonjury docket and set for trial on May 14, 1991. Embassy World filed its demand for a jury trial on March 28, 1991.

■ Under the Texas Rules of Civil Procedure, a request for a jury trial must be filed "a reasonable time before the date set for trial of a cause on the nonjury docket, but not less than thirty days in advance." TEX.R.CIV.P. 216; *Halsell v. Dehoyos*, 810 S.W.2d 371, 371 (Tex.1991). A request in advance of the thirty-day deadline is presumed to have been made a reasonable time before the trial. *Id.* The adverse party may rebut that presumption by showing that the granting of a jury trial would operate to injure the adverse party, disrupt the court's docket, or impede the ordinary handling of the court's business. *Id.*

■ In the instant case, the record reflects that Embassy World filed its request for a jury trial well before 30 days of May 14, 1991, the date the cause was set for trial as required by rule 216. Therefore, it is presumed that Embassy World's request was made a reasonable time before trial. Weng Enterprises, as the adverse party, did not present any evidence in the record to rebutt this presumption. Accordingly, the trial court abused its discretion in denying Embassy World's request for a jury trial. We must therefore determine whether the trial court's error was harmless.

■ A refusal to grant a jury trial is harmless error only if the record shows that no material issues of fact exist and an instructed verdict would have been justified. *Halsell,* 810 S.W.2d at 372; *Olson v. Texas Commerce Bank,* 715 S.W.2d 764, 767 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

The question then is whether there are disputed fact issues in the instant case upon which a jury could pass?

It is undisputed that the transaction did not close. There is, however, no evidence in the record showing why the transaction did not close. Therefore, there is no evidence to raise any issue of fact about the alleged breach of contract. Since there were no issues of fact raised by Embassy World that could have been submitted to the jury, Embassy World was not harmed by the judge's erroneous denial of a jury trial. *Id.*

### Attorney's fees

■ In its first cross-point, Embassy World asserts the trial court erred in denying recovery of attorney's fees under the terms of the agreement. As noted above, the agreement provided that a prevailing party in any lawsuit brought for the enforcement of the agreement is entitled to recover attorney's fees. Because Embassy World prevailed in the breach of contract suit brought by Weng Enterprises, it argues that, under the terms of the agreement, it was entitled to recover attorney's fees incurred in its defense of the suit.[4]

■ The general rule in Texas is that, unless provided for by statute or contract between the parties, attorney's fees incurred by a party to litigation are not recoverable against his adversary in a breach of contract action. *Turner v. Turner,* 385 S.W.2d 230, 233 (Tex.1964). In the instant case, the parties clearly provided by agreement for the award of attorney's fees. The term "prevailing party"

---

4. Section 17 of the agreement provides:
   If any legal action or any arbitration or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation, in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.

refers to the party who successfully prosecutes the action or successfully defends against the action on the main issue. *Hoffman v. Deck Masters, Inc.*, 662 S.W.2d 438, 441 (Tex.App.—Corpus Christi 1983, no writ). Weng Enterprises brought a breach of contract action for the enforcement of the termination provision of the agreement, and Embassy World prevailed by successfully defending itself and obtaining a directed verdict, that resulted in a take-nothing judgment being entered against Weng Enterprises. Thus, by the parties' own agreement, Embassy World was entitled to attorney's fees as the prevailing party. We therefore hold the trial court erred in denying Embassy World claim for attorneys fees incurred in its defense.

At trial, Embassy World presented uncontroverted evidence showing the reasonable and necessary attorney's fees incurred in the defense of the suit amounted to $4,367.25.[5] Embassy World's first cross-point is sustained.

Contingent consideration

■ In its third cross-point, Embassy World asserts the trial court erred in denying its claim for the contingent consideration as provided for in the agreement because it is against the great weight and preponderance of the evidence.

■ In reviewing questions of factual sufficiency, regardless of whether the complaining party had the burden of proof on the issue, we must consider and weigh all the evidence, both in support of and contrary to the challenged finding. The finding must be upheld unless we find that the evidence is so weak or the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 623 (Tex. App.—Houston [1st Dist.] 1987, no writ).

■ In a trial to the court, where no findings of fact and conclusions of law are

filed, the judgment of the trial court implies all necessary findings of fact to support it. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989); *In re Estate of Johnson*, 781 S.W.2d 390, 391 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Where the implied findings of fact are supported by the evidence, it is our duty to uphold the judgment on any theory of law applicable to the case. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex.1987).

As noted above, Embassy World filed a counterclaim asserting that it was entitled to recover $4,000 in contingent consideration for the purchase of the travel agency under the terms of the agreement. The agreement provides the following:

> [Weng Enterprises] hereby agrees to pay to [Embassy World] certain additional consideration (hereinafter referred to as Contingent Consideration), the exact amount of which, if any, is dependent upon the sales by [Weng Enterprises]. "Target Income" as used in this Agreement shall mean all net sales. Contingent Consideration shall be Four Thousand and no/100 ($4,000) for each Two Hundred Thousand and no/100 Dollars ($200,000) of Target Income, up to a maximum of Six Hundred Thousand and no/100 Dollars ($600,000) of Target Income.

The parties stipulated that net sales during the time Weng Enterprises operated the travel agency were $276,904.37. Based on the above provision of the agreement and the stipulated amount of sales, Embassy World asserts it is entitled to recover additional consideration of $4,000.

It is uncontroverted that the agreement did not close. There was no ultimate sale of the agency for which consideration was owed. Under the terms of the agreement, if Weng Enterprises failed or refused to close for any reason other than as provided in the termination provision detailed above or because of Embassy World's breach of the agreement, then Embassy World had no right to enforce specific performance,

---

5. This amount consists of $742.25 in costs, with the balance being 36.25 hours at a rate of $100 per hour.

but was entitled to retain all consideration paid as liquidated damages. The trial court construed this provision of the agreement to mean that "in the event that there is no closing," Embassy World was not entitled to specifically enforce the agreement. There is no pleading and no evidence in the record why the agreement did not close; therefore, Embassy World failed to allege or prove the condition precedent to their right for specific performance. *Parkview General Hosp., Inc. v. Eppes,* 447 S.W.2d 487, 490 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n.r.e.).

The trial court holding was not against the great weight and preponderance of the evidence.

Embassy World's third cross-point is overruled.

We render judgment that Embassy World take $4,367.25 in attorney's fees from Weng Enterprises. The remainder of the judgment is affirmed in part.