In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-03-00016-CV


______________________________




FLAGSHIP HOTEL, LTD., Appellant



V.



THE CITY OF GALVESTON, Appellee




 


On Appeal from the 405th Judicial District Court


Galveston County, Texas


Trial Court No. 98CV0795




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Ross



O P I N I O N



 This lawsuit centers around a lease between the City of Galveston and Flagship
Hotel, Ltd. The leased premises consist of the Galveston Marine Park and Pier and the
Flagship Hotel built on the pier. (1) There are four issues before this Court: (1) the expiration
date of the lease; (2) whether the trial court erred in ruling that the provisions of the lease
relating to the parties' respective maintenance obligations were unambiguous; (3) whether
the trial court erred in sustaining the City's plea to the jurisdiction concerning Flagship's
effort to obtain declaratory relief with regard to its alleged water and sewer arrearage; and
(4) whether the trial court erred in failing to award attorney's fees to Flagship and whether
the trial court erred in awarding attorney's fees to the City.

Background

 On May 20, 1963, the City of Galveston and Nide Corporation entered into a lease
agreement under which the City was to construct a hotel on the pier and then lease the
hotel and the pier to Nide. By agreement, the lease was to commence January 18, 1966,
and run for forty years, until January 18, 2006. After a series of assignments, Flagship
Hotel, Ltd. became the lessee. The 1963 lease remains the active lease, but it has been
modified by five separate amendments. Three of these amendments purported to extend
the time period covered by the lease.

 On September 1, 1998, Flagship brought suit against the City. In its petition,
Flagship alleged: (1) the City was liable for failure to properly repair and maintain the pier,
its surface, drive ramps, curbs, and railings; (2) the City was liable for water payments
Flagship had made to the City in excess of an alleged agreement between the parties;
(3) the City was liable for ad valorem taxes collected from Flagship in violation of the terms
of the lease; and (4) the City was liable for Flagship's reasonable and necessary attorney's
fees. The City responded with a general denial of Flagship's claims and asserted various
affirmative defenses. The City also filed a counterclaim which requested a declaration that
the lease was void.

 On December 18, 1998, the City filed a motion for summary judgment, contending
the lease was void and unenforceable. The trial court partially granted the motion, finding
the fourth amendment to the lease was void and unenforceable. On January 30, 2001,
both parties filed countervailing motions for summary judgment. On March 6, 2001, the
trial court denied Flagship's motion and partially granted the City's motion on grounds that
are not before this Court on appeal. 

 On March 21, 2001, the City filed a plea to the jurisdiction as to Flagship's request
for declaratory judgment regarding the water and sewer billing. On March 22, 2001,
Flagship applied for a temporary restraining order and temporary injunction to keep the City
from turning off its water supply. The trial court granted the temporary restraining order
April 16, 2001, and granted the injunction May 8, 2001. The City then brought an
interlocutory appeal from the injunction, contending the trial court lacked jurisdiction over
the water bill dispute. On May 11, 2001, the First Court of Appeals held the trial court
lacked jurisdiction to issue the injunction. City of Galveston v. Flagship Hotel, Ltd., 73
S.W.3d 422 (Tex. App.-Houston [1st Dist.] 2002, no pet.).

 On November 19, 2001, Flagship filed another motion for summary judgment, and
on December 11, 2001, the City filed a cross-motion for summary judgment. The trial court
denied both these motions January 30, 2002. The parties filed a motion for
reconsideration, and on March 27, 2002, the trial court entered a final judgment addressing
both motions. Both parties appeal from this judgment, which provides in relevant part as
follows: 

 3. The Fourth Amendment to the Lease Agreement between the Plaintiff
and Defendant concerning the Flagship Hotel and Pier, dated May 10,
1988, is void and unenforceable.


 [4.] The Fifth Amendment to the Lease dated August 18, 1993, and as
modified is not void. The Fifth Amendment to the Lease does not
extend the term of the Lease and cannot relate back to a void lease.
The effective date of the original Lease was adjusted in 1966 by
agreement between the City and the original Lessee. THE COURT
HEREBY ORDERS the Lease between the Flagship and the City
expires January 18, 2006.


 5. The Court reverses its order, dated March 6, 2001. The City is
entitled to summary judgment that the obligations of the City to repair
and maintain the pier and premises are limited to repairs beneath the
surface of the pier; and the gas line is excluded from the City's repair
and maintenance obligations. The original contract is clear that
Lessee is responsible for "the making of any and all exterior repairs
to the premises". The Second Amendment to the Lease is not clear
who is responsible for the exterior repairs above the surface of the
deck other than the Hotel structure and its amenities. However,
where a contract contains specific terms within a general clause the
general portion of the clause should be read in light of the specific
terms. The specific items mentioned in the Lease are all structural
components of the pier located beneath the surface of the deck. 
Therefore, the Defendant's obligations are to be interpreted
accordingly. In addition, any obligation not modified by the Second
Amendment remains as drafted into the original Lease. Therefore, it
is HEREBY ORDERED BY THE COURT the responsibility for exterior
repairs above the surface of the deck on which the Hotel is located,
whether it be lights, pier rails, or guard rails, are the responsibility of
the Plaintiff.


 . . . .


 8. Plaintiff, as lessee of the Flagship Hotel pursuant to the Lease
Agreement, as amended, with the City is not liable for City ad valorem
taxes on the leasehold and leasehold improvements of the Flagship
Pier and Hotel. THIS COURT HEREBY ORDERS the City is liable for
Plaintiff's payment of ad valorem taxes on the leasehold or leasehold
improvements in the sum of $47,322.06.


 9. THE COURT FURTHER FINDS the First Court of Appeals decision
and order dated March 14, 2002 holds this Court does not have
jurisdiction to rule on the Flagship's alleged water service arrearage
based on the First Court of Appeals statement in its conclusion: "We
hold, pursuant to the clear provisions of the relevant sections of the
Texas Water Code, the trial court lacked jurisdiction over this
specific dispute regarding Flagship's alleged water service
arrearage and the City's intention to discontinue water service to the
hotel." Therefore, the defendant's Plea to Jurisdiction as to Plaintiff's
Request for Declaratory Judgment Regarding Water and Sewer Billing
is GRANTED. It is therefore ORDERED that Plaintiff's Request for
Declaratory Judgment Regarding Water and Sewer Billing is
dismissed for want of subject matter jurisdiction. 

Standard of Review

 The movant for summary judgment has the burden of showing that there is no
genuine issue of material fact and that it is entitled to judgment as a matter of law. Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). In deciding whether there is a
disputed material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true. Id. at 548-49. Every reasonable inference must be
indulged in favor of the nonmovant and any doubts resolved in its favor. Id. at 549. 
Questions of law are reviewed de novo and will be upheld if the judgment can be sustained
on any legal theory supported by the evidence. Cook Composites, Inc. v. Westlake
Styrene Corp., 15 S.W.3d 124, 131 (Tex. App.-Houston [14th Dist.] 2000, pet. dism'd).

Expiration Date of the Lease


 As its first point of error, Flagship contends the trial court erred in applying Section
307.023 of the Texas Local Government Code to hold that the term of the lease expires
January 18, 2006. This statute allows the governing body of the municipality to enter into
any contract in connection with the pier and its facilities on terms it considers to be in the
best interest of the municipality. However, such a lease cannot "exceed 40 years from the
date of the lease or contract." Tex. Loc. Gov't Code Ann. § 307.023 (Vernon 1999).

 In this case, the lease was signed May 20, 1963, but by agreement, the lease was
to commence January 18, 1966, and run for forty years, until January 18, 2006. On
January 28, 1981, the City and Gulf Resorts, Ltd., the lessee at that time, executed a
second amendment to the lease. By this second amendment, Gulf Resorts agreed to
spend not less than $700,000.00 for hotel improvements by December 31, 1981. The
primary term was still to run until January 18, 2006, but under the second amendment, the
lessee had the option to renew the lease for three additional five-year periods. If all
renewal options were exercised, the lease would end January 18, 2021 (39 years, 11
months and 20 days from the date of the second amendment). In May 1988, the City and
Hospitality Interests, Inc., the lessee at that time, executed a fourth amendment to the
lease. Under the fourth amendment, Hospitality Interests agreed to spend not less than
$600,000.00 for hotel improvements by July 1, 1988. The primary term of the lease was
still to run until January 18, 2006, but under the fourth amendment, the lessee had the
option to renew for five successive five-year terms. If all options were exercised, the lease
would run until January 18, 2031 (42 years and 7 months from the date of the fourth
amendment). In August 1993, the lease was amended a fifth time. Under the fifth
amendment, Evergreen Lodging, Inc., the lessee at that time, agreed to spend
$250,000.00 for renovations by December 1992 as a condition precedent to its right to
invoke the five five-year renewal options as provided in the fourth amendment. If all
options were exercised under the fifth amendment, the lease would expire January 18,
2031 (37 years and 5 months from the date of the fifth amendment).

 The interpretation of an unambiguous contract is a question of law, which is
reviewed de novo. MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647,
650-51 (Tex. 1999). We also review the trial court's interpretation of applicable statutes
de novo. Tex-Air Helicopters, Inc. v. Galveston County Appraisal Review Bd., 76 S.W.3d
575, 581 (Tex. App.-Houston [14th Dist.] 2002, pet. denied). When construing a statute,
we look to the Legislature's intent. Nat'l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527
(Tex. 2000). If possible, we must ascertain the Legislature's intent from the language it
used in the statute and not look to extraneous matters. Id. 

 Flagship contends each amendment to the original lease created a new lease; thus,
both the second and the fifth amendments are effective to create new lease agreements
with terms extending the leasehold interest until January 18, 2021, or January 18, 2031,
respectively, without violating Section 307.023. Flagship agrees that the plain language
of the statute prohibits a particular lease from exceeding a term of forty years, but contends
nothing in the statute prohibits the City from making successive leases, so long as the term
of any such successive lease does not exceed forty years. 

 Flagship relies on Boudreaux Civic Ass'n v. Cox, 882 S.W.2d 543, 547-48 (Tex.
App.-Houston [1st Dist.] 1994, no writ), to illustrate that, "A modification to a contract
creates a new contract that includes the new, modified provisions and the unchanged old
provisions." See also Greenbelt Elec. Coop., Inc. v. Johnson, 608 S.W.2d 320, 325 (Tex.
Civ. App.-Amarillo 1980, no writ). Flagship contends that each time an amendment was
executed by the parties, a new lease agreement was formed and the provisions of Section
307.023 must be applied to that new lease agreement independently of the old agreement. 
The City, on the other hand, contends the date of the lease remains as an unchanged old
provision of the original lease, which causes the forty years to still run from that original
date, because Section 307.023 states a lease cannot "exceed 40 years from the date of
the lease." The City summarizes its position by saying, "In short, the addition of the
amendments to the lease does not modify or nullify the commencement date of the original
lease. Rather, the amendments are merely an attempt to add something to the lease: an
extension of the lease term." 

 The City believes Flagship's method of calculating the lease term, which essentially
allows infinite extensions of the lease term, so long as no single one extends beyond forty
years, contradicts the wording of Section 307.023, which says a lease cannot "exceed 40
years from the date of the lease . . . ." Tex. Loc. Gov't Code Ann. § 307.023 (emphasis
added). One of the purposes of Section 307.023 is to prevent the City from entering into
an extremely lengthy lease of the pier. The forty-year term limit allows the City the
opportunity to re-evaluate what it is doing with the premises at least once every forty years. 
Flagship contends the amendments were in compliance with the intent of Section 307.023
because the City was able to re-evaluate its use of the pier at the time of the negotiations
for each amendment. In fact, the City was able to negotiate improvements to the premises
with each new amendment. At the time of the amendments (except for the fourth
amendment, which Flagship admits is void), the City was not locked into a newly
negotiated term of longer than forty years. 

 Each party asserts two alternative dates which it contends must be the expiration
of the lease. Flagship's first alternative is that the lease runs until January 18, 2031,
pursuant to the fifth amendment. Flagship's second alternative is that the lease runs until
January 18, 2021, pursuant to the second amendment. The City's first alternative is that
the lease runs until May 20, 2003, pursuant to the date of the original lease. The City's
second alternative is that the lease runs until January 18, 2006, pursuant to the agreed
start date of the lease. 

 We hold that Flagship's first alternative is the correct expiration date of the lease. 
We agree with the trial court that the fourth amendment to the lease is void as to its term,
because it was in excess of forty years from the time of the execution of the fourth
amendment. However, portions of the fourth amendment were validly incorporated into
the fifth amendment, even though the fourth amendment itself is void. The fifth
amendment provides:

 Article III of the Amended Lease is hereby further amended by amending
Section 3.05, as set forth in the Fourth Amendment to Lease, as hereinafter
set forth:


 Section 3.05 It shall be a condition precedent to the
effectiveness of the provisions of Section (3) of the Fourth
Amendment to this lease (which Section amends Section 4.01
of this Lease) that the Lessee shall promptly commence with
the remodeling and redecorating of the Hotel being operated
on a portion of the demised premises and that the Lessee
shall, without liability to the Lessor, incur expenses of not less
than $250,000 by the 31st day of December, 1992, or as soon
thereafter as is practicable, . . . .


Although the fourth amendment is void, other provisions were incorporated into the fifth
amendment when the City and Flagship negotiated their incorporation. The fifth
amendment is within the forty-year statutory limit and is a valid amendment. The term of
the lease is based on a forty-year period from the original lease dated January 18, 1966,
plus an additional twenty-five years (five five-year options), which causes the lease to
expire January 18, 2031. The period from the date of the fifth amendment, August 18,
1993, to January 18, 2031, is thirty-seven years and five months. Because this is less than
forty years, Flagship is in compliance with the requirements of Section 307.023. 

 We believe this approach is in harmony with the intent of the statute to prevent the
City from binding itself for longer than forty years at any one time. With the exception of
the fourth amendment, the newly negotiated terms did not exceed forty years from the time
they were agreed on by the parties. Because each amendment created a new lease for
the purpose of Section 307.023, the lease expires January 18, 2031. Flagship's contention
the trial court erred in holding the lease expires January 18, 2006, is sustained. 

Maintenance Obligations


 Flagship contends the maintenance obligations of the parties were ambiguous
because of conflicts within the contract. Flagship also contends the ambiguity was
evidenced by previous actions taken by the City. Despite these contentions, the trial court
granted summary judgment in the City's favor with respect to the maintenance obligations
of the parties.

 Whether a contract is ambiguous is a question of law. O'Kehie v. Harris Leasing
Co., 80 S.W.3d 316, 318 (Tex. App.-Texarkana 2002, no pet.). There are two steps to an
ambiguity analysis. Cook Composites, Inc., 15 S.W.3d at 131. First, we apply the
applicable rules of construction and decide if the contract is ambiguous. Id. The second
step is reached only if we find the contract is ambiguous. Id. If we find a contract
ambiguous, then a trier of fact may consider the parties' interpretation and other
extraneous evidence. Id. Because an ambiguous contract raises a question of fact, it
cannot be disposed of on summary judgment. Id. 

 The primary concern in the first step of the ambiguity analysis is to determine and
give effect to the intentions of the parties as expressed in the instrument. Id. We look only
within the four corners of the agreement to see what is actually stated, not at what was
allegedly meant. Id. No single provision of the contract is to be controlling, as we must
consider all of the provisions with reference to the entire contract. Id. at 132.

 The maintenance provisions of this lease are found in article VI of the original lease,
as amended by provisions contained in the second amendment. Under sections 6.01 and
6.02 of the original lease, the lessee was assigned all duties with regard to paying for
expenses relating to the maintenance of the "demised premises," which were defined as
the pier and any improvements to the pier. The second amendment to the lease added
sections 6.07 and 6.08 to the maintenance provisions of the lease. Flagship contends that,
when sections 6.07 and 6.08 of the lease are read together, it becomes ambiguous as to
the maintenance for which the City is responsible with respect to the pier.

 Section 6.07 reads:

 

 The Lessee further agrees to maintain the Hotel in a first class condition,
both as to structure and amenities. . . . 


 Section 6.08 reads:


 Notwithstanding the provisions of Section 6.01 hereof, during the term of this
lease, the Lessor shall, at its expense, pay all maintenance and operation
expenses of that portion of the demised premises commencing with the
surface of the deck on which the Hotel is located and proceeding downward. 
Such responsibility shall include, without limitation, the keeping and
maintaining in good repair of the columns, beams, supporting members and
other structural portions of the demised premises from the surface of the
deck upon which the Hotel is located and proceeding downward, and the
making of any and all repairs thereto.


 Section 6.01, which was a part of the original lease, reads, in part:


 Lessee shall, at its expense, pay all maintenance and operation expenses
of the demised premises . . . including . . . the making of any and all exterior
repairs to the premises.


 Flagship asserts:

 When the provisions of section 6.07 are read in conjunction with the
provisions of section 6.08, it is unclear which party had the obligations to
maintain things attached to the leasehold property. The term "surface of the
deck" is ambiguous in that it is unclear whether the "surface of the deck" is
intended to mean things attached to the Pier (such as light poles and
railings) or whether the "surface of the deck" is the pavement of the deck
only, or if it even includes the pavement on the deck.


The City contends that there is no conflict between the two sections and maintains that,
while section 6.07 obligates Flagship to maintain the hotel in a first-class condition as to
its structure and amenities, it does not absolutely limit Flagship's obligations or negate
responsibility on the part of Flagship in maintaining other portions of the premises.

 When a contract contains specific terms within a general clause, the general clause
should be read in light of the specific terms. See Barnett v. Aetna Life Ins. Co., 723
S.W.2d 663, 666 (Tex. 1987). All of the lease's specific terms requiring repairs to be made
by the City refer to structural components of the pier located beneath the surface of the
deck. Again, section 6.08 reads:

 Notwithstanding the provisions of Section 6.01 hereof, during the term of this
lease, the Lessor shall, at its expense, pay all maintenance and operation
expenses of that portion of the demised premises commencing with the
surface of the deck on which the Hotel is located and proceeding downward. 
Such responsibility shall include, without limitation, the keeping and
maintaining in good repair of the columns, beams, supporting members and
other structural portions of the demised premises from the surface of the
deck upon which the Hotel is located and proceeding downward, and the
making of any and all repairs thereto.


Considering only the language within the four corners of the contract, we perceive no
ambiguity in the maintenance obligations of each party, especially in light of the specific
terms listed after the general term "surface of the deck." The City's maintenance
obligations start with the surface of the deck, including the pavement, and proceed
downward, just as the plain language of section 6.08 states. We do not find "surface of
the deck" to be an ambiguous phrase. Neither do we find that "surface of the deck" would
include things attached to it, especially when the obligation is described as surface of the
deck and proceeding downward. The things attached to the deck, such as light poles and
railing, would be described as proceeding upward from the surface of the deck. We
therefore agree with the trial court that the contract is not ambiguous. Flagship's
contention to the contrary is overruled.

Plea to the Jurisdiction


 In the underlying lawsuit, Flagship asked for a declaratory judgment that its alleged
water and sewer arrearage was barred both by the statute of limitations and by agreements
between the Galveston City Manager and Flagship. Flagship also sought an injunction
preventing the City from cutting off water service to the hotel. The trial court granted the
injunction, and the City brought an interlocutory appeal. 

 The First Court of Appeals held the trial court lacked jurisdiction over the specific
dispute regarding Flagship's alleged water service arrearage and the City's intention to

discontinue water service to the hotel. Flagship Hotel, Ltd., 73 S.W.3d at 427-28. After
considering the First Court of Appeals' opinion, the trial court granted the City's plea to the
jurisdiction. The trial court held it did not have jurisdiction to rule on Flagship's alleged
water service arrearage "based on the First Court of Appeals statement in its conclusion: 
'We hold, pursuant to the clear provisions of the relevant sections of the Texas Water
Code, the trial court lacked jurisdiction over this specific dispute regarding Flagship's
alleged water service arrearage and the City's intention to discontinue water service to
the hotel'." 

 As part of this appeal, Flagship contends the trial court erred in granting the City's
plea and in dismissing its declaratory judgment claims relating to the water issues. 
Flagship argues that the First Court of Appeals' opinion addresses only claims for injunctive
relief. Flagship contends the trial court has jurisdiction over the declaratory judgment
claims relating to the water issues and only lacks jurisdiction with respect to its request for
injunctive relief.

 The City contends the prior decision of the First Court of Appeals is the law of this
case and controls the jurisdictional question surrounding the water dispute; the City alleges
Flagship's interpretation of the opinion is much too restrictive. The City points out the
purpose of a temporary injunction is "to preserve the status quo, or the 'last, actual,
peaceable, noncontested status which preceded the pending controversy.'" Crestview, Ltd.
v. Foremost Ins. Co., 621 S.W.2d 816, 827 (Tex. Civ. App.-Austin 1981, writ ref'd n.r.e.). 
A temporary injunction is issued only on a showing of a probable injury and a probable right
to recover after a final hearing. Id. at 828. 

 Although the First Court of Appeals' decision only addressed whether the trial court
could issue a temporary injunction, it held that the Texas Water Code granted the City
exclusive original jurisdiction over such disputes and the Texas Natural Resource
Conservation Commission (TNRCC) appellate jurisdiction. See Flagship Hotel, Ltd., 73
S.W.3d at 427. We find the First Court of Appeals' reasoning persuasive, and Flagship
must exhaust its administrative remedies through the Texas Commission on Environmental
Quality, formerly the TNRCC.

 The trial court properly sustained the City's plea to the jurisdiction.

Attorney's Fees


 Flagship contends the trial court abused its discretion by failing to award attorney's
fees under Section 38.001. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon
1997). The City contends Flagship was not entitled to attorney's fees because it was not
a prevailing party on its breach of contract claim. (2) 

 A trial court's award of attorney's fees is reviewed for an abuse of discretion. 
Au Pharm., Inc. v. Boston, 986 S.W.2d 331, 337 (Tex. App.-Texarkana 1999, no pet.);
Knighton v. Int'l Bus. Machs. Corp., 856 S.W.2d 206, 210 (Tex. App.-Houston [1st Dist.]
1993, writ denied). Attorney's fees are awarded under Section 38.001 for a breach of
contract claim. "When a prevailing party in a breach of contract suit seeks attorney's fees
under Section 38.001, makes its proof, and meets the requirements of the section, an
award of attorney's fees is mandatory." Atl. Richfield Co. v. Long Trusts, 860 S.W.2d 439,
449 (Tex. App.-Texarkana 1993, writ denied); see Bocquet v. Herring, 972 S.W.2d 19,
20-21 (Tex. 1998).

 To recover under Section 38.001, a party must be a prevailing party and be awarded
damages. Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997); Howard v. City of
Kerrville, 75 S.W.3d 112, 119 (Tex. App.-San Antonio 2002, pet. denied). Several courts
of appeals have defined a prevailing party as the party to the suit "who successfully
prosecutes the action or successfully defends against it, prevailing on the main issue, even
though not to the extent of its original contention." (3) This definition originated from the
definition in Black's Law Dictionary. (4) The City argues Flagship is not a prevailing party
because it did not recover on the main issue. Flagship only recovered for one of the three
allegations of breach of contract. The City argues that, since it successfully defended on
the main issue of repairs and maintenance, Flagship did not prevail on the main issue. 

 Black's Law Dictionary now defines "prevailing party" as "[a] party in whose favor a
judgment is rendered, regardless of the amount of damages awarded." Black's Law
Dictionary 1145 (7th ed. 1999). Our research indicates courts have only considered
whether a party prevailed on the main issue where both parties received judgment under
the cause of action, i.e., where both parties breached the contract. Fed. Deposit Ins. Corp.
v. Graham, 882 S.W.2d 890, 900-01 (Tex. App.-Houston [14th Dist.] 1994, no writ); Criton
Corp. v. Highlands Ins. Co., 809 S.W.2d 355, 357-58 (Tex. App.-Houston [14th Dist.]
1991, writ denied); Hoffman v. Deck Masters, Inc., 662 S.W.2d 438, 441 (Tex.
App.-Corpus Christi 1983, no writ). If only one party prevailed, courts have concluded that
party prevailed on the main issue. See Norrell v. Aransas County Navigation Dist. # 1,
1 S.W.3d 296, 303 (Tex. App.-Corpus Christi 1999, no pet.); Emery Air Freight Corp. v.
Gen. Transp. Sys., Inc., 933 S.W.2d 312, 316 (Tex. App.-Houston [14th Dist.] 1996, no
writ); Weng Enters., Inc. v. Embassy World Travel, Inc., 837 S.W.2d 217, 222-23 (Tex.
App.-Houston [1st Dist.] 1992, no writ).

 We believe the main focus of our inquiry should be whether the agreement was
breached, not the extent of the breach. Flagship prevailed on the breach of contract cause
of action, although the extent of the breach was not as substantial as first alleged. The
definitions adopted by other courts do not require the party to receive a judgment "to the
extent of its original contention." (5) Further, while only a prevailing party may recover under
Section 38.001, net recovery in the overall suit is not required. Atl. Richfield Co., 860
S.W.2d at 449. Determination of the prevailing party focus should be based on the
success on the merits, i.e., the party who is vindicated by the trial court's judgment. City
of Amarillo v. Glick, 991 S.W.2d 14, 17 (Tex. App.-Amarillo 1997, no pet.).

 Accordingly, we hold that "prevailing party" means the "party in whose favor a
judgment is rendered, regardless of the amount of damages awarded." See Black's Law
Dictionary 1145. If multiple parties receive judgment under the cause of action, the party
which received judgment on the "main issue" is the prevailing party. Since Flagship is the
only party that received a judgment under breach of contract (for recovery of sums paid by
Flagship to the City for ad valorem taxes), Flagship is the prevailing party. Because
Flagship also received damages ($47,322.06), it was entitled to its attorney's fees. 

 The City also argues Flagship was not entitled to its attorney's fees because it failed
to segregate the fees attributable to the contract cause of action from its other causes of
action. A party seeking to recover attorney's fees carries the burden of proof to establish
the amount which is reasonable and necessary. See Stewart Title Guar. Co. v. Sterling,
822 S.W.2d 1, 10 (Tex. 1991) (DTPA); Aetna Cas. & Sur. v. Wild, 944 S.W.2d 37, 40 (Tex.
App.-Amarillo 1997, writ denied) (adopting Stewart in context of Section 38.001). The
general rule is that attorney's fees attributable to other defendants and other causes of
action must be segregated. See Stewart Title Guar. Co., 822 S.W.2d at 10-11; Aetna Cas.
& Sur., 944 S.W.2d at 40. An exception to the general rule is when the claims are
inseparably intertwined. Stewart Title Guar. Co., 822 S.W.2d at 11; Aetna Cas. & Sur., 944
S.W.2d at 40. The determination of whether attorney's fees can be segregated is a
question for the court. Aetna Cas. & Sur., 944 S.W.2d at 41. This determination requires
a consideration of the substantive law necessary to establish facts to support a recovery
of the multiple claims. Id. 

 We hold that, in the instant case, the declaratory judgment actions were not
inseparable from the breach of contract claims. Validity of the modifications of the lease,
construction of the provisions relating to the parties' respective maintenance obligations,
and liability for water payments, are all claims that are not inseparably intertwined with the
breach of contract claims. Flagship correctly points out it did segregate the breach of
contract claims from the other causes of action. The City argues Flagship should further
segregate fees based on the different theories of breach of contract. However,
segregation based on separate theories of the same cause of action is not necessary. (6) 

 The breach of contract claims are not inseparable from the other claims. (7) Because
Flagship did segregate its attorney's fees in its counsel's affidavit, and because the City
only contests this segregation on the basis of the different theories of breach of contract,
Flagship's affidavit is uncontroverted. Uncontroverted testimony by an interested witness
concerning attorney's fees may establish a fact as a matter of law. Cale's Clean Scene
Carwash, Inc. v. Hubbard, 76 S.W.3d 784, 787 (Tex. App.-Houston [14th Dist.] 2002, no
pet.). The uncontroverted affidavit establishes the reasonable and necessary attorney's
fees for the breach of contract claim as $48,862.00. The trial court abused its discretion
in failing to award Flagship its attorney's fees in this amount.

 Flagship contends the trial court erred in awarding attorney's fees to the City. The
City contends it was entitled to attorney's fees under both Sections 38.001 (breach of
contract) and 37.009 (declaratory judgment) of the Texas Civil Practice and Remedies
Code. Flagship contends the City was not entitled to attorney's fees because attorney's
fees were awarded under Section 38.001 and, because the City breached the contract, it
was not a "prevailing party." 

 The order granting attorney's fees does not state a basis for the award, and the City
alleged it was entitled to attorney's fees under both Sections 38.001 and 37.009. Section
37.009 authorizes the trial court to award costs and "reasonable and necessary" attorney's
fees that are "equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon
1997). A party is not required to substantially prevail in order to be awarded attorney's fees
under Section 37.009. Barshop v. Medina County Underground Water Conservation Dist.,
925 S.W.2d 618, 637 (Tex. 1996). Thus, it is not an abuse of discretion to award
attorney's fees to a nonprevailing party if that is equitable and just under the
circumstances. 

 Flagship further contends the City cannot be awarded attorney's fees under Section
37.009 because the declaratory judgment did not give rise to any new issues. When a
party brings a declaratory judgment action by way of a counterclaim, and that counterclaim
involves only issues already raised by the original claim, the party is not entitled to an
award of attorney's fees. (8) However, validity of the contract modifications and liability as to
water payments were issues not raised in the breach of contract claim. The declaratory
judgment action therefore raised new issues.

 The trial court's discretion in awarding attorney's fees under Section 37.009 is
limited by whether the attorney's fees were "reasonable and necessary" as well as whether
they were "equitable and just." See Arthur M. Deck & Assocs. v. Crispin, 888 S.W.2d 56,
62 (Tex. App.-Houston [1st Dist.] 1994, writ denied); see also Bocquet, 972 S.W.2d at 20. 
Further, a party is entitled only to the attorney's fees attributable to the declaratory
judgment action and must segregate such fees from the other causes of action. Hill v.
Heritage Res., Inc., 964 S.W.2d 89, 143 (Tex. App.-El Paso 1997, pet. denied). 

 Here, the City failed to segregate fees attributable to the breach of contract cause
of action from the cause of action seeking declaratory judgment. As discussed above,
these causes are not inseparable. Therefore, we hold the trial court abused its discretion
by awarding fees based on unsegregated attorney's fees. Unsegregated attorney's fees
however, is some evidence of segregated attorney's fees. See Stewart Title Guar. Co.,
822 S.W.2d at 12. We therefore reverse the trial court's award and remand this issue to
the trial court for determination, pursuant to Section 37.009, of the properly segregated
fees, and for determination of whether an award of such fees is "equitable and just" in light
of our opinion, and if so, what amount is "reasonable and necessary."

Summary and Conclusion


 In summary, we reverse the trial court's judgment that the term of the lease expires
January 18, 2006, and render judgment that such term expires January 18, 2031. We
affirm the trial court's judgment that the provisions of the lease relating to the parties'
respective maintenance obligations are unambiguous. We affirm the trial court's
determination that it lacked jurisdiction over the water service arrearage. We reverse the
judgment denying attorney's fees to Flagship and render judgment that Flagship recover
its attorney's fees from the City in the amount of $48,862.00. We reverse the judgment
granting the City its attorney's fees and remand this issue for determination (under Section
37.009 of the Texas Civil Practice and Remedies Code), of the properly segregated fees,
and for determination of whether an award of such fees to the City is "equitable and just"
in light of our opinion, and if so, what amount is "reasonable and necessary."


 Accordingly, the trial court's judgment is reversed in part, rendered in part, and
remanded in part for further proceedings consistent with this opinion. 



 Donald R. Ross

 Justice 

 

Date Submitted: August 27, 2003

Date Decided: October 2, 2003

1. On September 30, 2002, the City invited bids to purchase the Flagship Hotel and
the pier on which it stands. Landry's Restaurants, Inc. submitted a bid, and the city council
awarded the sale of the hotel and pier to Landry's October 24, 2002. The sale was
scheduled to close May 31, 2003. 
2. The City contended at oral argument Flagship had not presented the claim as
required under Section 38.002. See Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (Vernon
1997). This error had not been alleged in the City's briefs. Arguments and claims of error
not raised in the party's brief are considered waived. See Vawter v. Garvey, 786 S.W.2d
263 (Tex. 1990); In re R.L.H., 771 S.W.2d 697 (Tex. App.-Austin 1989, writ denied). By
failing to present a point or argument, a party waives the right to complain of the error. The
court of appeals will err if it reverses on that ground in the absence of properly assigned

error. Pat Baker Co. v. Wilson, 971 S.W.2d 447, 450 (Tex. 1998); Vawter, 786 S.W.2d
263; Allright, Inc. v. Pearson, 735 S.W.2d 240 (Tex. 1987).
3. Fed. Deposit Ins. Corp. v. Graham, 882 S.W.2d 890, 900 (Tex. App.-Houston [14th
Dist.] 1994, no writ) (quoting Criton Corp. v. Highlands Ins. Co., 809 S.W.2d 355, 357 (Tex.
App.-Houston [14th Dist.] 1991, writ denied)); see City of Amarillo v. Glick, 991 S.W.2d 14,
17 (Tex. App.-Amarillo 1997, no pet.); G. Richard Goins Constr. Co. v. S.B. McLaughlin
Assocs., 930 S.W.2d 124, 130 (Tex. App.-Tyler 1996, writ denied); Weng Enters., Inc. v.
Embassy World Travel, Inc., 837 S.W.2d 217, 222-23 (Tex. App.-Houston [1st Dist.] 1992,
no writ); Hoffman v. Deck Masters, Inc., 662 S.W.2d 438, 441 (Tex. App.-Corpus Christi
1983, no writ).
4. The Court of Appeals at Corpus Christi adopted the definition from the fifth edition
of Black's Law Dictionary published in 1979. See Hoffman, 662 S.W.2d at 441. The First
Court of Appeals at Houston adopted the definition from Hoffman. See Weng Enters., Inc.,
837 S.W.2d at 222-23. The Court of Appeals at Tyler adopted the definition from Weng. 
See G. Richard Goins Constr. Co., 930 S.W.2d at 130. The Fourteenth Court of Appeals
at Houston adopted the definition from the fourth edition of Black's Law Dictionary. See
Criton, 809 S.W.2d at 357. The Court of Appeals at Amarillo adopted the definition from
both of the Courts of Appeals at Houston. See Glick, 991 S.W.2d at 17.
5. See Glick, 991 S.W.2d at 17; G. Richard Goins Constr. Co., 930 S.W.2d at 130;
Graham, 882 S.W.2d at 900; Weng Enters., Inc., 837 S.W.2d at 222-23; Hoffman, 662
S.W.2d at 441. 
6. Courts examine segregation based on whether different causes of action have
similar elements and arise out of the same set of circumstances. They do not examine
whether the different theories of the same cause of action need to be segregated. See
Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 11 (Tex. 1991); Aetna Cas. & Sur. v.
Wild, 944 S.W.2d 37, 41 (Tex. App.-Amarillo 1997, writ denied)
; Panizo v. Young Men's
Christian Ass'n, 938 S.W.2d 163, 169-70 (Tex. App.-Houston [1st Dist.] 1996, no writ);
Kenneth H. Hughes Interests, Inc. v. Westrup, 879 S.W.2d 229, 236-37 (Tex.
App.-Houston [1st Dist.] 1994, writ denied); see also Au Pharm., Inc. v. Boston, 986
S.W.2d 331, 338 (Tex. App.-Texarkana 1999, no pet.).
7. Flagship argues that the segregation standard is difficult to meet. We disagree and
note that segregated attorney's fees can be established with evidence of unsegregated
attorney's fees and a rough percent of the amount attributable to the breach of contract
claim. Schenck v. Ebby Halliday Real Estate, Inc., 803 S.W.2d 361, 369 (Tex. App.-Fort
Worth 1990, no writ); accord Bradbury v. Scott, 788 S.W.2d 31, 40 (Tex. App.-Houston
[1st Dist.] 1989, writ denied). 
8. See Brush v. Reata Oil & Gas Corp., 984 S.W.2d 720, 730 (Tex. App.-Waco 1998,
pet. denied); see also John Chezik Buick Co. v. Friendly Chevrolet Co., 749 S.W.2d 591,
594-95 (Tex. App.-Dallas 1988, writ denied); Narisi v. Legend Diversified Invs., 715
S.W.2d 49, 51-52 (Tex. App.-Dallas 1986, writ ref'd n.r.e.); Johnson v. Hewitt, 539 S.W.2d
239, 240-41 (Tex. Civ. App.-Houston [1st Dist.] 1976, no writ); Joseph v. City of Ranger,
188 S.W.2d 1013, 1014-15 (Tex. Civ. App.-Eastland 1945, writ ref'd w.o.m.).