CRITON CORPORATION, Appellant,

v.

HIGHLANDS INSURANCE COMPANY
and Layton Bridge Company,
Appellees.

No. B14–90–608–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 9, 1991.

Madison R. Jones, Houston, for appellant.

David N. Williams, Houston, for appellees.

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

## OPINION

JUNELL, Justice.

In a non-jury trial the court rendered judgment in favor of the appellees Layton Bridge Company (Layton) and its surety, Highlands Insurance Company (Highlands). Appellant alleges error concerning attorneys' fees and insufficient evidence. We affirm.

On October 20, 1986, Layton and Criton executed a Purchase Order which formed the basis for a subcontract. Layton was the general contractor in a bridge building project for Harris County, Texas. Highlands was Layton's surety on the project and provided the statutory performance and payment bonds. Criton negotiated with Layton to act as a subcontractor to provide pedestrian rails and automobile guard rails for the bridge project. The price of the subcontract between Layton and Criton was $96,014.04. Criton was to provide the necessary materials and men to install the pedestrian rails and guard rails. Although the purchase order, i.e. contract, was executed in October of 1986, Criton's work was not required until November of 1987.[1]

Criton commenced actual work on or about November 5, 1987. The activities contemplated by the contract consisted of placing upright metal standards on anchor plates, supplied by Criton but installed by Layton, and then bolting on the guard rail. The rest of the facts are in dispute. Criton claims that when it went out to do the work, the anchor plates were not set to the spacing, 6'3", which had been specified in the plans. Criton contends that because of this it was necessary to burn holes in the rail in order to be able to bolt the rails to the standards. Criton claims that Layton's foreman told Criton to "make it fit."[2] Criton did "make it fit" by burning holes.

Layton contends that Criton simply botched the beginning of the job, and carried the same mistake throughout. Layton's position is that if Criton had done the job correctly at the start, it would have been unnecessary to burn the holes with the acetylene torch.

Criton claims that it went on with the work, uninterrupted, until approximately one half day of work remained. At that point, Criton complains that Layton summarily removed Criton from the job without prior complaint. Criton contends that it wanted an opportunity to correct the work, if necessary, and complete the job. Layton claims that Criton refused to acknowledge that the work was defective, much less correct it. What is undisputed is that the Harris County inspector refused to accept the work because of the burned holes.

Approximately 660 feet of bridge rail was required to be removed and replaced due to the excessive holes being burned into the rail. Layton removed and replaced the work at a cost of $12,525.10. As it turns out, Layton was able, by replacing

---

1. While Criton did not actually begin work until November of 1987, Layton called on Criton to deliver part of the materials in April and May of 1987.

2. Whether or not the burning of holes in the rail causes structural problems or just burns off the galvanizing is also in dispute. It is a question that need not be answered here. It is sufficient to note that the Harris County inspector on the bridge project refused to accept the rail work.

the work itself, to do the job for $90,244.17. The original contract price being $96,014.04, Layton actually saved $5,769.87. Layton pled this amount into the Registry of the Court claiming that this was the only monies due to Criton from the contract.

Criton filed this suit alleging breach of the subcontract and quantum meruit in the alternative. Layton responded by general denial and alleged affirmative defenses of payment and offset. Layton also claimed that Criton had breached the subcontract and thus it was entitled to attorneys' fees under Tex.Civ.Prac. & Rem.Code Ann. § 38.001. The trial court granted judgment in favor of Layton, and awarded the amount in the Registry to Criton to be offset against the $13,000 awarded to Layton in attorneys' fees.

In its first three points of error appellant contends, for various reasons, that Layton was not entitled to attorneys' fees. Criton's basic contention is that Layton had no claim upon which to prevail, thus, it cannot be the prevailing party entitled to attorneys' fees under Tex.Civ.Prac. & Rem.Code Ann. § 38.001. Further, appellant argues that appellees failed to comply with the procedural requirements of Tex.Civ.Prac. & Rem.Code Ann. § 38.002. Specifically, Criton claims that Layton failed to plead and prove presentment of a contract claim.

We will first discuss appellant's contention that Layton had no claim and was therefore not a prevailing party entitled to attorneys' fees.

In its Second Amended Original Answer and First Amended Counterclaim, Layton first made a general denial. Then, Layton made specific denials and allegations as to the work done by Criton. Most importantly, Layton alleged that Criton had breached the subcontract and damaged Layton. Layton requested damages caused by the breach. After a general denial and claims that Criton breached the contract, Layton asserted the affirmative defenses of payment and offset. Layton also requested attorneys' fees pursuant to the Texas Civil Practice and Remedies Code.

■ It has been consistently held in Texas that the purpose of pleadings is to de-fine the issues at trial and give the opposing party fair and adequate notice of the pleader's contentions. *Murray v. O & A Express, Inc.*, 630 S.W.2d 633 (Tex.1982); *Tennell v. Esteve Cotton Co.*, 546 S.W.2d 346 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.); *Yeager Electric & Plumbing, Inc. v. Ingleside Cove Lumber & Builders*, 526 S.W.2d 738 (Tex.Civ.App.—Corpus Christi 1975, no writ). Further, the substance of a pleading for relief should be looked to to determine the nature of the pleading, not merely the form or title given to it. *State Bar of Texas v. Heard*, 603 S.W.2d 829 (Tex.1980).

■ A substantive reading of the pleading filed by Layton reveals that Layton did have a contract claim against Criton. Layton's pleading claimed that Criton had breached the subcontract causing damage to Layton. Thus, Criton's argument that Layton did not seek affirmative relief and damages and is therefore not entitled to attorneys' fees is not supported by the record. Further, at trial, Layton presented evidence that Criton had breached the subcontract and caused money damages to Layton.

■ Having determined that Layton did have a claim against Criton, the question remains as to whether Layton was the prevailing party on the claim. Black's Law Dictionary, Revised Fourth Edition defines "prevailing party" as:

That one of the parties to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of his original contention.

In this action, the main issue was which party breached the subcontract. The trial court specifically found that Criton had breached the subcontract and damaged Layton in that Layton was required to repair and complete the bridge rails. Where a general contractor recovers the amount necessary to complete the contract less the amount the general contractor retains, the general contractor is the prevailing party entitled to attorneys' fees. *Davis Masonry, Inc. v. B–F–W Construction Co., Inc.*,

622 S.W.2d 144 (Tex.Civ.App.—Waco 1981), *writ ref'd n.r.e. per curiam,* 639 S.W.2d 448 (Tex.1982). Thus, Layton was the prevailing and successful party entitled to attorneys' fees.

Criton next argues that Layton was not entitled to attorneys' fees under TEX. CIV.PRAC. & REM.CODE ANN. § 38.001 because Layton did not comply procedurally with the requirements of TEX.CIV.PRAC. & REM.CODE ANN. § 38.002, a prerequisite to entitlement to attorney's fees under § 38.001. Particularly, Criton contends that Layton failed to present its claim to Criton, preventing Criton from tendering performance.

TEX.CIV.PRAC. & REM.CODE ANN. § 38.002 provides that three requirements must be met before a party is entitled to attorneys' fees under § 38.001:

(1) the claimant must be represented by an attorney;

(2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and

(3) payment for the amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.

Appellant makes no contentions regarding the first and third requirements under the section, but Criton claims that Layton failed to make a presentation, thus failing to meet the second requirement under § 38.002.

The purpose of the requirement of presentation of a claim is to allow the party against whom the claim is asserted an opportunity to pay the claim within thirty days after they have notice of it without incurring an obligation for attorneys' fees. *Jones v. Kelley,* 614 S.W.2d 95 (Tex.1981). Further, no particular form of presentment is required, as the statute requiring presentment is to be liberally construed to promote its underlying purpose. *Id.* Even though no particular form of presentment is required, the party making the claim must allege in its pleadings that presentment was made and that the party to which the presentment was made failed to tender performance. *Nettles v. Del Lingco of*

*Houston,* 638 S.W.2d 633 (Tex.App.—El Paso 1982, no writ).

In the instant case, Layton pled that it requested that Criton replace the defective work but that Criton refused. This pleading is supported by the testimony of the president of Layton who stated that he telephoned Criton's president, Mr. Conklin, and presented his request that full performance be tendered and was refused. An oral request for performance is sufficient to meet the presentment requirement of § 38.002. *King Optical v. Auto. Data Processing, etc.,* 542 S.W.2d 213, 217 (Tex. Civ.App.—Waco 1976, writ ref'd n.r.e.). Criton did not tender performance within thirty days. Layton met all the procedural requirements under the Civil Practice and Remedies Code. This is supported by the pleadings and the evidence. Appellant's first three points of error are overruled.

In its fourth through eighth points of error appellant argues that several of the trial court's findings are supported by insufficient evidence or that they are so against the great weight and preponderance of the evidence as to be manifestly unjust. We disagree.

Findings of fact in an action tried to the court have the same force and dignity as a jury's verdict upon special issues. *City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). Such findings are not conclusive, however, when a complete statement of facts appears in the record. *Middleton v. Kawasaki Steel Corp.,* 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e. per curiam,* 699 S.W.2d 199 (Tex.1985). The trial court's findings of fact are reviewable for factual sufficiency of the evidence by the same standards as are used in reviewing the factual sufficiency of the evidence supporting a jury's answer to a jury question. *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r. e.). In reviewing a challenge to the factual sufficiency of the evidence, the court of appeals must examine all of the evidence and having considered and weighed all of

the evidence, it should set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Further, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.— Houston [1st Dist.] 1984, writ ref'd n.r.e.).

■ This last statement is very significant in the instant case because the evidence here basically constituted a swearing match. Criton's president, Hugh Conklin, testified that Criton did substantially perform the subcontract. Layton's president, Ernie Layton, testified that Criton did not substantially perform the contract. And so it went with these two witnesses and the other witnesses as well on each issue or claim. This being the case, it is impossible to find that evidence is too weak or clearly wrong and unjust. The trial court judged the credibility of the witnesses and we may not substitute our opinion for that of the trial court and retry the facts. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986) (per curiam). Appellant's points of error four through eight are overruled.

In its ninth point of error appellant contends that it is entitled to attorneys' fees. Appellant's ninth point of error is contingent upon its being successful on one of its other points of error. In order to collect attorneys' fees a party must prevail on a claim or successfully defend against one. Since this is not the case, the point of error is without merit and is overruled.

■ In its tenth point of error appellant alleges that Layton was not entitled to post judgment interest, arguing again that Layton had no claim on which to prevail. This contention was answered in the discussion of appellant's points of error one through three. Layton did have a claim and was successful thereon. As appellant states in its brief, interest is an incident of debt. *Cox v. Davison,* 397 S.W.2d 200 (Tex.1965). Since Layton is entitled to recover its attorneys' fees, offset against the amount due Criton from the Registry, there is a debt

and Layton is therefore entitled to post judgment interest. Appellant's tenth point of error is overruled.

The judgment of the trial court is affirmed.