In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00066-CR


______________________________




LACEY KERSEY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 32625-B




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 On April 6, 2006, Lacey Kersey waived her right to a jury trial and pled guilty to the offense
of sexual assault, see Tex. Penal Code Ann. § 22.011 (Vernon Supp. 2006), without the benefit
of a negotiated plea agreement. Kersey now appeals, contending the trial court erred by failing to
order a competency hearing, pursuant to Tex. Code Crim. Proc. Ann. art. 46B.004 (Vernon Supp.
2006). A trial court's failure to conduct a separate "inquiry" regarding the defendant's competency
is a matter that we review on appeal for abuse of discretion. See, e.g., Auldridge v. State, 533
S.W.2d 821, 822 (Tex. Crim. App. 1976) (quoting Ainsworth v. State, 493 S.W.2d 517 (Tex. Crim.
App. 1973)); Ballard v. State, 514 S.W.2d 267, 268 (Tex. Crim. App. 1974); Lawrence v. State, 169
S.W.3d 319, 322 (Tex. App.--Fort Worth 2005, pet. ref'd). A trial court abuses its discretion if it
acts without reference to any guiding rules or principles, or if its decision is arbitrary or
unreasonable. Malone v. State, 163 S.W.3d 785, 793 (Tex. App.--Texarkana 2005, pet. ref'd).

 During the plea colloquy, the following exchange occurred between Kersey and the trial
court:

THE COURT: Do you have any history of insanity, and by that I mean, have
you ever been confined to a mental institution or under the care of a psychiatrist for
mental problems?


[Kersey]: Yes, sir.


THE COURT: Tell me about that, when?


[Kersey]: I was young, I was about nine. I was confined to Saint Mary's
Hospital, mental institution in Rochester, Minnesota.


THE COURT: For how long?


[Kersey]: For a year.


THE COURT: Okay. Have you had any type of psychiatric care since that
time?


[Kersey]: Yes, sir, on and off all my life.


THE COURT: When was the last time?


[Kersey]: About a year ago, I went through Sabine Valley to get started back
on my medication.


THE COURT: Do you know where you are right this minute?


[Kersey]: Yes, sir.


THE COURT: Where are you?


[Kersey]: Gregg County.


THE COURT: Well, where?


[Kersey]: Courtroom, Gregg County courtroom.


THE COURT: Why are you here?


[Kersey]: Because of this case?


THE COURT: What case?


[Kersey]: The sexual assault.


THE COURT: Okay. Mr. Scott [Kersey's trial counsel], how long have you
known her?


[Counsel for Kersey]: I've known her for about three months, sir.


THE COURT: During the period of time you've been acquainted with her,
has anything come to your attention to indicate or suggest there's anything mentally
wrong with her at this time?


[Counsel for Kersey]: No, your Honor.


THE COURT: Based on the contacts that you've had with her, in your
opinion, is she presently mentally competent to appear before this Court?


[Counsel for Kersey]: She is, your Honor.


THE COURT: You are charged by grand jury indictment with the offense of
sexual assault. You have a right to have the indictment read to you at this time if you
wish. Do you want the indictment read to you or not?


[Kersey]: No, sir.


THE COURT: Are you telling me you fully understand, you fully
comprehend the exact nature of the accusation being brought against you by the bill
of indictment?


[Kersey]: Yes, sir.


 During the remainder of the plea admonishments, Kersey tells the trial court that she
understands (1) the applicable range of punishment; (2) that the trial court is not obligated to
consider awarding community supervision; (3) that any award of community supervision would be
granted pursuant to a deferment of an adjudication of guilt; (4) that the trial court could impose 180
days' confinement as a condition of community supervision; (5) that, should she decide to move to
another state and have her community supervision transferred, the recipient state is under no
obligation to accept the transfer of community supervision; (6) that, if she is granted community
supervision and the State subsequently alleges she violated the terms of her release, a hearing on
whether her supervision should be revoked will be in front of a judge, rather than a jury; (7) that if
community supervision is granted and subsequently revoked, any time she spent in jail as a condition
of community supervision does not have to be credited against any term of imprisonment ordered
during the revocation proceeding; (8) that she was waiving her right to have a presentence
investigation conducted; (9) that, if the trial court elected not to follow the parties' recommendations
regarding sentence, Kersey could not, because there had been no negotiated plea agreement,
withdraw her guilty plea; (10) that she would have to register as a sex offender as a consequence of
her plea; (11) that she could face an enhanced sentencing range if she commits a third felony in
Texas, see Tex. Penal Code Ann. § 12.42 (Vernon Supp. 2006); (12) that she was formally waiving
her right to a jury trial as part of her guilty plea; (13) that she was waiving her right to confront the
witnesses against her and permitting the State to present its evidence in written form; and (14) that,
by signing a written judicial confession, she was giving up her Fifth Amendment protection against
self-incrimination.

 Under the Texas Code of Criminal Procedure, a defendant is presumed competent to stand
trial "unless proved incompetent by a preponderance of the evidence." Tex. Code Crim. Proc.
Ann. art. 46B.003(b) (Vernon Supp. 2006). "A person is incompetent to stand trial if the person
does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable
degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings
against the person." Tex. Code Crim. Proc. Ann. art. 46B.003(a) (Vernon Supp. 2006) (emphasis
added). Article 46B.004(b) of the Texas Code of Criminal Procedure requires the trial court to
conduct an inquiry into the defendant's competence "[i]f evidence suggesting the defendant may be
incompetent to stand trial comes to the attention of the court" from any source. Tex. Code Crim.
Proc. Ann. art. 46B.004(b). But this inquiry is required only if the evidence raises a "bona fide"
doubt in the trial court's mind as to the accused's competency. Collier v. State, 959 S.W.2d 621, 625
(Tex. Crim. App. 1997); Eddie v. State, 100 S.W.3d 437, 444 (Tex. App.--Texarkana 2003, pet.
ref'd). "In general, a bona fide doubt is raised, so as to require [an inquiry], only if the evidence
indicates a recent severe mental illness, at least moderate mental retardation, or truly bizarre acts by
the defendant." Collier, 959 S.W.2d at 625 (citing Mata v. State, 632 S.W.2d 355, 359 (Tex. Crim.
App. 1982)); Eddie, 100 S.W.3d at 444; see also Alcott v. State, 51 S.W.3d 596, 602 (Tex. Crim.
App. 2001) (Price, J., concurring) ("[E]vidence available must raise a bona fide doubt.").

 In this case, the exchange between the trial court and Kersey did not suggest moderate
retardation or truly bizarre acts by Kersey. To the extent that Kersey informed the trial court she had
been hospitalized "to get started back on [her] medication," Kersey said such hospitalization
occurred more than a year before her presence at the guilty plea proceedings now at issue on appeal,
and there is no suggestion in the evidence that her year-old hospitalization was for a "severe" mental
illness. The fact that an accused has been taking prescribed psychiatric medication or has had a
history of mental illness does not, by itself, require the trial court to conduct a competency inquiry,
unless there is also evidence the accused lacks the present ability to communicate with counsel or
the ability to understand the legal proceedings. Moore v. State, 999 S.W.2d 385, 395-96 (Tex. Crim.
App. 1999); LaHood v. State, 171 S.W.3d 613, 619 (Tex. App.--Houston [14th Dist.] 2005, pet.
ref'd). In this case, Kersey's affirmative responses during the trial court's inquiry demonstrated she
had both a sufficient present ability to consult with her attorney with a reasonable degree of rational
understanding and a rational as well as factual understanding of the proceedings against her. Cf.
LaHood, 171 S.W.3d at 619 (record revealed nothing that accused had trouble understanding
proceedings or communicating with counsel); Lawrence, 169 S.W.3d at 322-23 (accused's testimony
showed not that he lacked rational or factual understanding of proceedings or ability to communicate
with counsel); Eddie, 100 S.W.3d at 444 (record revealed "lucid and rational, though troubled,
person able to carry on a dialogue").

 Kersey suggests to this Court in her brief that the trial court erred by propounding questions
to Kersey that were designed to solicit answers only supporting an affirmative finding of
competency, instead of asking questions designed to solicit answers that would support a finding of
incompetency. We do not read the trial court's question, as presented above, in such a narrow
fashion. For example, when the trial court specifically asked Kersey's counsel whether he knew of
anything suggesting Kersey was mentally ill, the court's question did not, in any way, suggest the
answer ultimately provided by counsel. Instead, we read the trial court's question as an open
invitation to counsel to provide any evidence that might suggest Kersey was currently incompetent
to stand trial. The trial court then went a step further and asked trial counsel the very specific
question of whether counsel believed Kersey to be presently competent. If Kersey or her counsel had
any evidence to suggest Kersey lacked competency, certainly such a question should have prompted
Kersey or her counsel to provide such evidence to the trial court at that time. Instead, Kersey's
counsel affirmatively stated he believed Kersey to be competent. 

 Based on the state of the evidence available to the trial court, we conclude the evidence was
insufficient to create a bona fide doubt about Kersey's competency, as that term has been defined by
our law. Accordingly, we conclude the trial court did not abuse its discretion, we overrule Kersey's
sole point of error, and we affirm the trial court's judgment.



 Jack Carter

 Justice


Date Submitted: September 19, 2006

Date Decided: October 19, 2006


Do Not Publish



added). One of the purposes of Section 307.023 is to prevent the City from entering into
an extremely lengthy lease of the pier. The forty-year term limit allows the City the
opportunity to re-evaluate what it is doing with the premises at least once every forty years. 
Flagship contends the amendments were in compliance with the intent of Section 307.023
because the City was able to re-evaluate its use of the pier at the time of the negotiations
for each amendment. In fact, the City was able to negotiate improvements to the premises
with each new amendment. At the time of the amendments (except for the fourth
amendment, which Flagship admits is void), the City was not locked into a newly
negotiated term of longer than forty years. 

 Each party asserts two alternative dates which it contends must be the expiration
of the lease. Flagship's first alternative is that the lease runs until January 18, 2031,
pursuant to the fifth amendment. Flagship's second alternative is that the lease runs until
January 18, 2021, pursuant to the second amendment. The City's first alternative is that
the lease runs until May 20, 2003, pursuant to the date of the original lease. The City's
second alternative is that the lease runs until January 18, 2006, pursuant to the agreed
start date of the lease. 

 We hold that Flagship's first alternative is the correct expiration date of the lease. 
We agree with the trial court that the fourth amendment to the lease is void as to its term,
because it was in excess of forty years from the time of the execution of the fourth
amendment. However, portions of the fourth amendment were validly incorporated into
the fifth amendment, even though the fourth amendment itself is void. The fifth
amendment provides:

 Article III of the Amended Lease is hereby further amended by amending
Section 3.05, as set forth in the Fourth Amendment to Lease, as hereinafter
set forth:


 Section 3.05 It shall be a condition precedent to the
effectiveness of the provisions of Section (3) of the Fourth
Amendment to this lease (which Section amends Section 4.01
of this Lease) that the Lessee shall promptly commence with
the remodeling and redecorating of the Hotel being operated
on a portion of the demised premises and that the Lessee
shall, without liability to the Lessor, incur expenses of not less
than $250,000 by the 31st day of December, 1992, or as soon
thereafter as is practicable, . . . .


Although the fourth amendment is void, other provisions were incorporated into the fifth
amendment when the City and Flagship negotiated their incorporation. The fifth
amendment is within the forty-year statutory limit and is a valid amendment. The term of
the lease is based on a forty-year period from the original lease dated January 18, 1966,
plus an additional twenty-five years (five five-year options), which causes the lease to
expire January 18, 2031. The period from the date of the fifth amendment, August 18,
1993, to January 18, 2031, is thirty-seven years and five months. Because this is less than
forty years, Flagship is in compliance with the requirements of Section 307.023. 

 We believe this approach is in harmony with the intent of the statute to prevent the
City from binding itself for longer than forty years at any one time. With the exception of
the fourth amendment, the newly negotiated terms did not exceed forty years from the time
they were agreed on by the parties. Because each amendment created a new lease for
the purpose of Section 307.023, the lease expires January 18, 2031. Flagship's contention
the trial court erred in holding the lease expires January 18, 2006, is sustained. 

Maintenance Obligations


 Flagship contends the maintenance obligations of the parties were ambiguous
because of conflicts within the contract. Flagship also contends the ambiguity was
evidenced by previous actions taken by the City. Despite these contentions, the trial court
granted summary judgment in the City's favor with respect to the maintenance obligations
of the parties.

 Whether a contract is ambiguous is a question of law. O'Kehie v. Harris Leasing
Co., 80 S.W.3d 316, 318 (Tex. App.-Texarkana 2002, no pet.). There are two steps to an
ambiguity analysis. Cook Composites, Inc., 15 S.W.3d at 131. First, we apply the
applicable rules of construction and decide if the contract is ambiguous. Id. The second
step is reached only if we find the contract is ambiguous. Id. If we find a contract
ambiguous, then a trier of fact may consider the parties' interpretation and other
extraneous evidence. Id. Because an ambiguous contract raises a question of fact, it
cannot be disposed of on summary judgment. Id. 

 The primary concern in the first step of the ambiguity analysis is to determine and
give effect to the intentions of the parties as expressed in the instrument. Id. We look only
within the four corners of the agreement to see what is actually stated, not at what was
allegedly meant. Id. No single provision of the contract is to be controlling, as we must
consider all of the provisions with reference to the entire contract. Id. at 132.

 The maintenance provisions of this lease are found in article VI of the original lease,
as amended by provisions contained in the second amendment. Under sections 6.01 and
6.02 of the original lease, the lessee was assigned all duties with regard to paying for
expenses relating to the maintenance of the "demised premises," which were defined as
the pier and any improvements to the pier. The second amendment to the lease added
sections 6.07 and 6.08 to the maintenance provisions of the lease. Flagship contends that,
when sections 6.07 and 6.08 of the lease are read together, it becomes ambiguous as to
the maintenance for which the City is responsible with respect to the pier.

 Section 6.07 reads:

 

 The Lessee further agrees to maintain the Hotel in a first class condition,
both as to structure and amenities. . . . 


 Section 6.08 reads:


 Notwithstanding the provisions of Section 6.01 hereof, during the term of this
lease, the Lessor shall, at its expense, pay all maintenance and operation
expenses of that portion of the demised premises commencing with the
surface of the deck on which the Hotel is located and proceeding downward. 
Such responsibility shall include, without limitation, the keeping and
maintaining in good repair of the columns, beams, supporting members and
other structural portions of the demised premises from the surface of the
deck upon which the Hotel is located and proceeding downward, and the
making of any and all repairs thereto.


 Section 6.01, which was a part of the original lease, reads, in part:


 Lessee shall, at its expense, pay all maintenance and operation expenses
of the demised premises . . . including . . . the making of any and all exterior
repairs to the premises.


 Flagship asserts:

 When the provisions of section 6.07 are read in conjunction with the
provisions of section 6.08, it is unclear which party had the obligations to
maintain things attached to the leasehold property. The term "surface of the
deck" is ambiguous in that it is unclear whether the "surface of the deck" is
intended to mean things attached to the Pier (such as light poles and
railings) or whether the "surface of the deck" is the pavement of the deck
only, or if it even includes the pavement on the deck.


The City contends that there is no conflict between the two sections and maintains that,
while section 6.07 obligates Flagship to maintain the hotel in a first-class condition as to
its structure and amenities, it does not absolutely limit Flagship's obligations or negate
responsibility on the part of Flagship in maintaining other portions of the premises.

 When a contract contains specific terms within a general clause, the general clause
should be read in light of the specific terms. See Barnett v. Aetna Life Ins. Co., 723
S.W.2d 663, 666 (Tex. 1987). All of the lease's specific terms requiring repairs to be made
by the City refer to structural components of the pier located beneath the surface of the
deck. Again, section 6.08 reads:

 Notwithstanding the provisions of Section 6.01 hereof, during the term of this
lease, the Lessor shall, at its expense, pay all maintenance and operation
expenses of that portion of the demised premises commencing with the
surface of the deck on which the Hotel is located and proceeding downward. 
Such responsibility shall include, without limitation, the keeping and
maintaining in good repair of the columns, beams, supporting members and
other structural portions of the demised premises from the surface of the
deck upon which the Hotel is located and proceeding downward, and the
making of any and all repairs thereto.


Considering only the language within the four corners of the contract, we perceive no
ambiguity in the maintenance obligations of each party, especially in light of the specific
terms listed after the general term "surface of the deck." The City's maintenance
obligations start with the surface of the deck, including the pavement, and proceed
downward, just as the plain language of section 6.08 states. We do not find "surface of
the deck" to be an ambiguous phrase. Neither do we find that "surface of the deck" would
include things attached to it, especially when the obligation is described as surface of the
deck and proceeding downward. The things attached to the deck, such as light poles and
railing, would be described as proceeding upward from the surface of the deck. We
therefore agree with the trial court that the contract is not ambiguous. Flagship's
contention to the contrary is overruled.

Plea to the Jurisdiction


 In the underlying lawsuit, Flagship asked for a declaratory judgment that its alleged
water and sewer arrearage was barred both by the statute of limitations and by agreements
between the Galveston City Manager and Flagship. Flagship also sought an injunction
preventing the City from cutting off water service to the hotel. The trial court granted the
injunction, and the City brought an interlocutory appeal. 

 The First Court of Appeals held the trial court lacked jurisdiction over the specific
dispute regarding Flagship's alleged water service arrearage and the City's intention to

discontinue water service to the hotel. Flagship Hotel, Ltd., 73 S.W.3d at 427-28. After
considering the First Court of Appeals' opinion, the trial court granted the City's plea to the
jurisdiction. The trial court held it did not have jurisdiction to rule on Flagship's alleged
water service arrearage "based on the First Court of Appeals statement in its conclusion: 
'We hold, pursuant to the clear provisions of the relevant sections of the Texas Water
Code, the trial court lacked jurisdiction over this specific dispute regarding Flagship's
alleged water service arrearage and the City's intention to discontinue water service to
the hotel'." 

 As part of this appeal, Flagship contends the trial court erred in granting the City's
plea and in dismissing its declaratory judgment claims relating to the water issues. 
Flagship argues that the First Court of Appeals' opinion addresses only claims for injunctive
relief. Flagship contends the trial court has jurisdiction over the declaratory judgment
claims relating to the water issues and only lacks jurisdiction with respect to its request for
injunctive relief.

 The City contends the prior decision of the First Court of Appeals is the law of this
case and controls the jurisdictional question surrounding the water dispute; the City alleges
Flagship's interpretation of the opinion is much too restrictive. The City points out the
purpose of a temporary injunction is "to preserve the status quo, or the 'last, actual,
peaceable, noncontested status which preceded the pending controversy.'" Crestview, Ltd.
v. Foremost Ins. Co., 621 S.W.2d 816, 827 (Tex. Civ. App.-Austin 1981, writ ref'd n.r.e.). 
A temporary injunction is issued only on a showing of a probable injury and a probable right
to recover after a final hearing. Id. at 828. 

 Although the First Court of Appeals' decision only addressed whether the trial court
could issue a temporary injunction, it held that the Texas Water Code granted the City
exclusive original jurisdiction over such disputes and the Texas Natural Resource
Conservation Commission (TNRCC) appellate jurisdiction. See Flagship Hotel, Ltd., 73
S.W.3d at 427. We find the First Court of Appeals' reasoning persuasive, and Flagship
must exhaust its administrative remedies through the Texas Commission on Environmental
Quality, formerly the TNRCC.

 The trial court properly sustained the City's plea to the jurisdiction.

Attorney's Fees


 Flagship contends the trial court abused its discretion by failing to award attorney's
fees under Section 38.001. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon
1997). The City contends Flagship was not entitled to attorney's fees because it was not
a prevailing party on its breach of contract claim. (2) 

 A trial court's award of attorney's fees is reviewed for an abuse of discretion. 
Au Pharm., Inc. v. Boston, 986 S.W.2d 331, 337 (Tex. App.-Texarkana 1999, no pet.);
Knighton v. Int'l Bus. Machs. Corp., 856 S.W.2d 206, 210 (Tex. App.-Houston [1st Dist.]
1993, writ denied). Attorney's fees are awarded under Section 38.001 for a breach of
contract claim. "When a prevailing party in a breach of contract suit seeks attorney's fees
under Section 38.001, makes its proof, and meets the requirements of the section, an
award of attorney's fees is mandatory." Atl. Richfield Co. v. Long Trusts, 860 S.W.2d 439,
449 (Tex. App.-Texarkana 1993, writ denied); see Bocquet v. Herring, 972 S.W.2d 19,
20-21 (Tex. 1998).

 To recover under Section 38.001, a party must be a prevailing party and be awarded
damages. Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997); Howard v. City of
Kerrville, 75 S.W.3d 112, 119 (Tex. App.-San Antonio 2002, pet. denied). Several courts
of appeals have defined a prevailing party as the party to the suit "who successfully
prosecutes the action or successfully defends against it, prevailing on the main issue, even
though not to the extent of its original contention." (3) This definition originated from the
definition in Black's Law Dictionary. (4) The City argues Flagship is not a prevailing party
because it did not recover on the main issue. Flagship only recovered for one of the three
allegations of breach of contract. The City argues that, since it successfully defended on
the main issue of repairs and maintenance, Flagship did not prevail on the main issue. 

 Black's Law Dictionary now defines "prevailing party" as "[a] party in whose favor a
judgment is rendered, regardless of the amount of damages awarded." Black's Law
Dictionary 1145 (7th ed. 1999). Our research indicates courts have only considered
whether a party prevailed on the main issue where both parties received judgment under
the cause of action, i.e., where both parties breached the contract. Fed. Deposit Ins. Corp.
v. Graham, 882 S.W.2d 890, 900-01 (Tex. App.-Houston [14th Dist.] 1994, no writ); Criton
Corp. v. Highlands Ins. Co., 809 S.W.2d 355, 357-58 (Tex. App.-Houston [14th Dist.]
1991, writ denied); Hoffman v. Deck Masters, Inc., 662 S.W.2d 438, 441 (Tex.
App.-Corpus Christi 1983, no writ). If only one party prevailed, courts have concluded that
party prevailed on the main issue. See Norrell v. Aransas County Navigation Dist. # 1,
1 S.W.3d 296, 303 (Tex. App.-Corpus Christi 1999, no pet.); Emery Air Freight Corp. v.
Gen. Transp. Sys., Inc., 933 S.W.2d 312, 316 (Tex. App.-Houston [14th Dist.] 1996, no
writ); Weng Enters., Inc. v. Embassy World Travel, Inc., 837 S.W.2d 217, 222-23 (Tex.
App.-Houston [1st Dist.] 1992, no writ).

 We believe the main focus of our inquiry should be whether the agreement was
breached, not the extent of the breach. Flagship prevailed on the breach of contract cause
of action, although the extent of the breach was not as substantial as first alleged. The
definitions adopted by other courts do not require the party to receive a judgment "to the
extent of its original contention." (5) Further, while only a prevailing party may recover under
Section 38.001, net recovery in the overall suit is not required. Atl. Richfield Co., 860
S.W.2d at 449. Determination of the prevailing party focus should be based on the
success on the merits, i.e., the party who is vindicated by the trial court's judgment. City
of Amarillo v. Glick, 991 S.W.2d 14, 17 (Tex. App.-Amarillo 1997, no pet.).

 Accordingly, we hold that "prevailing party" means the "party in whose favor a
judgment is rendered, regardless of the amount of damages awarded." See Black's Law
Dictionary 1145. If multiple parties receive judgment under the cause of action, the party
which received judgment on the "main issue" is the prevailing party. Since Flagship is the
only party that received a judgment under breach of contract (for recovery of sums paid by
Flagship to the City for ad valorem taxes), Flagship is the prevailing party. Because
Flagship also received damages ($47,322.06), it was entitled to its attorney's fees. 

 The City also argues Flagship was not entitled to its attorney's fees because it failed
to segregate the fees attributable to the contract cause of action from its other causes of
action. A party seeking to recover attorney's fees carries the burden of proof to establish
the amount which is reasonable and necessary. See Stewart Title Guar. Co. v. Sterling,
822 S.W.2d 1, 10 (Tex. 1991) (DTPA); Aetna Cas. & Sur. v. Wild, 944 S.W.2d 37, 40 (Tex.
App.-Amarillo 1997, writ denied) (adopting Stewart in context of Section 38.001). The
general rule is that attorney's fees attributable to other defendants and other causes of
action must be segregated. See Stewart Title Guar. Co., 822 S.W.2d at 10-11; Aetna Cas.
& Sur., 944 S.W.2d at 40. An exception to the general rule is when the claims are
inseparably intertwined. Stewart Title Guar. Co., 822 S.W.2d at 11; Aetna Cas. & Sur., 944
S.W.2d at 40. The determination of whether attorney's fees can be segregated is a
question for the court. Aetna Cas. & Sur., 944 S.W.2d at 41. This determination requires
a consideration of the substantive law necessary to establish facts to support a recovery
of the multiple claims. Id. 

 We hold that, in the instant case, the declaratory judgment actions were not
inseparable from the breach of contract claims. Validity of the modifications of the lease,
construction of the provisions relating to the parties' respective maintenance obligations,
and liability for water payments, are all claims that are not inseparably intertwined with the
breach of contract claims. Flagship correctly points out it did segregate the breach of
contract claims from the other causes of action. The City argues Flagship should further
segregate fees based on the different theories of breach of contract. However,
segregation based on separate theories of the same cause of action is not necessary. (6) 

 The breach of contract claims are not inseparable from the other claims. (7) Because
Flagship did segregate its attorney's fees in its counsel's affidavit, and because the City
only contests this segregation on the basis of the different theories of breach of contract,
Flagship's affidavit is uncontroverted. Uncontroverted testimony by an interested witness
concerning attorney's fees may establish a fact as a matter of law. Cale's Clean Scene
Carwash, Inc. v. Hubbard, 76 S.W.3d 784, 787 (Tex. App.-Houston [14th Dist.] 2002, no
pet.). The uncontroverted affidavit establishes the reasonable and necessary attorney's
fees for the breach of contract claim as $48,862.00. The trial court abused its discretion
in failing to award Flagship its attorney's fees in this amount.

 Flagship contends the trial court erred in awarding attorney's fees to the City. The
City contends it was entitled to attorney's fees under both Sections 38.001 (breach of
contract) and 37.009 (declaratory judgment) of the Texas Civil Practice and Remedies
Code. Flagship contends the City was not entitled to attorney's fees because attorney's
fees were awarded under Section 38.001 and, because the City breached the contract, it
was not a "prevailing party." 

 The order granting attorney's fees does not state a basis for the award, and the City
alleged it was entitled to attorney's fees under both Sections 38.001 and 37.009. Section
37.009 authorizes the trial court to award costs and "reasonable and necessary" attorney's
fees that are "equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon
1997). A party is not required to substantially prevail in order to be awarded attorney's fees
under Section 37.009. Barshop v. Medina County Underground Water Conservation Dist.,
925 S.W.2d 618, 637 (Tex. 1996). Thus, it is not an abuse of discretion to award
attorney's fees to a nonprevailing party if that is equitable and just under the
circumstances. 

 Flagship further contends the City cannot be awarded attorney's fees under Section
37.009 because the declaratory judgment did not give rise to any new issues. When a
party brings a declaratory judgment action by way of a counterclaim, and that counterclaim
involves only issues already raised by the original claim, the party is not entitled to an
award of attorney's fees. (8) However, validity of the contract modifications and liability as to
water payments were issues not raised in the breach of contract claim. The declaratory
judgment action therefore raised new issues.

 The trial court's discretion in awarding attorney's fees under Section 37.009 is
limited by whether the attorney's fees were "reasonable and necessary" as well as whether
they were "equitable and just." See Arthur M. Deck & Assocs. v. Crispin, 888 S.W.2d 56,
62 (Tex. App.-Houston [1st Dist.] 1994, writ denied); see also Bocquet, 972 S.W.2d at 20. 
Further, a party is entitled only to the attorney's fees attributable to the declaratory
judgment action and must segregate such fees from the other causes of action. Hill v.
Heritage Res., Inc., 964 S.W.2d 89, 143 (Tex. App.-El Paso 1997, pet. denied). 

 Here, the City failed to segregate fees attributable to the breach of contract cause
of action from the cause of action seeking declaratory judgment. As discussed above,
these causes are not inseparable. Therefore, we hold the trial court abused its discretion
by awarding fees based on unsegregated attorney's fees. Unsegregated attorney's fees
however, is some evidence of segregated attorney's fees. See Stewart Title Guar. Co.,
822 S.W.2d at 12. We therefore reverse the trial court's award and remand this issue to
the trial court for determination, pursuant to Section 37.009, of the properly segregated
fees, and for determination of whether an award of such fees is "equitable and just" in light
of our opinion, and if so, what amount is "reasonable and necessary."

Summary and Conclusion


 In summary, we reverse the trial court's judgment that the term of the lease expires
January 18, 2006, and render judgment that such term expires January 18, 2031. We
affirm the trial court's judgment that the provisions of the lease relating to the parties'
respective maintenance obligations are unambiguous. We affirm the trial court's
determination that it lacked jurisdiction over the water service arrearage. We reverse the
judgment denying attorney's fees to Flagship and render judgment that Flagship recover
its attorney's fees from the City in the amount of $48,862.00. We reverse the judgment
granting the City its attorney's fees and remand this issue for determination (under Section
37.009 of the Texas Civil Practice and Remedies Code), of the properly segregated fees,
and for determination of whether an award of such fees to the City is "equitable and just"
in light of our opinion, and if so, what amount is "reasonable and necessary."


 Accordingly, the trial court's judgment is reversed in part, rendered in part, and
remanded in part for further proceedings consistent with this opinion. 



 Donald R. Ross

 Justice 

 

Date Submitted: August 27, 2003

Date Decided: October 2, 2003

1. On September 30, 2002, the City invited bids to purchase the Flagship Hotel and
the pier on which it stands. Landry's Restaurants, Inc. submitted a bid, and the city council
awarded the sale of the hotel and pier to Landry's October 24, 2002. The sale was
scheduled to close May 31, 2003. 
2. The City contended at oral argument Flagship had not presented the claim as
required under Section 38.002. See Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (Vernon
1997). This error had not been alleged in the City's briefs. Arguments and claims of error
not raised in the party's brief are considered waived. See Vawter v. Garvey, 786 S.W.2d
263 (Tex. 1990); In re R.L.H., 771 S.W.2d 697 (Tex. App.-Austin 1989, writ denied). By
failing to present a point or argument, a party waives the right to complain of the error. The
court of appeals will err if it reverses on that ground in the absence of properly assigned

error. Pat Baker Co. v. Wilson, 971 S.W.2d 447, 450 (Tex. 1998); Vawter, 786 S.W.2d
263; Allright, Inc. v. Pearson, 735 S.W.2d 240 (Tex. 1987).
3. Fed. Deposit Ins. Corp. v. Graham, 882 S.W.2d 890, 900 (Tex. App.-Houston [14th
Dist.] 1994, no writ) (quoting Criton Corp. v. Highlands Ins. Co., 809 S.W.2d 355, 357 (Tex.
App.-Houston [14th Dist.] 1991, writ denied)); see City of Amarillo v. Glick, 991 S.W.2d 14,
17 (Tex. App.-Amarillo 1997, no pet.); G. Richard Goins Constr. Co. v. S.B. McLaughlin
Assocs., 930 S.W.2d 124, 130 (Tex. App.-Tyler 1996, writ denied); Weng Enters., Inc. v.
Embassy World Travel, Inc., 837 S.W.2d 217, 222-23 (Tex. App.-Houston [1st Dist.] 1992,
no writ); Hoffman v. Deck Masters, Inc., 662 S.W.2d 438, 441 (Tex. App.-Corpus Christi
1983, no writ).
4. The Court of Appeals at Corpus Christi adopted the definition from the fifth edition
of Black's Law Dictionary published in 1979. See Hoffman, 662 S.W.2d at 441. The First
Court of Appeals at Houston adopted the definition from Hoffman. See Weng Enters., Inc.,
837 S.W.2d at 222-23. The Court of Appeals at Tyler adopted the definition from Weng. 
See G. Richard Goins Constr. Co., 930 S.W.2d at 130. The Fourteenth Court of Appeals
at Houston adopted the definition from the fourth edition of Black's Law Dictionary. See
Criton, 809 S.W.2d at 357. The Court of Appeals at Amarillo adopted the definition from
both of the Courts of Appeals at Houston. See Glick, 991 S.W.2d at 17.
5. See Glick, 991 S.W.2d at 17; G. Richard Goins Constr. Co., 930 S.W.2d at 130;
Graham, 882 S.W.2d at 900; Weng Enters., Inc., 837 S.W.2d at 222-23; Hoffman, 662
S.W.2d at 441. 
6. Courts examine segregation based on whether different causes of action have
similar elements and arise out of the same set of circumstances. They do not examine
whether the different theories of the same cause of action need to be segregated. See
Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 11 (Tex. 1991); Aetna Cas. & Sur. v.
Wild, 944 S.W.2d 37, 41 (Tex. App.-Amarillo 1997, writ denied)
; Panizo v. Young Men's
Christian Ass'n, 938 S.W.2d 163, 169-70 (Tex. App.-Houston [1st Dist.] 1996, no writ);
Kenneth H. Hughes Interests, Inc. v. Westrup, 879 S.W.2d 229, 236-37 (Tex.
App.-Houston [1st Dist.] 1994, writ denied); see also Au Pharm., Inc. v. Boston, 986
S.W.2d 331, 338 (Tex. App.-Texarkana 1999, no pet.).
7. Flagship argues that the segregation standard is difficult to meet. We disagree and
note that segregated attorney's fees can be established with evidence of unsegregated
attorney's fees and a rough percent of the amount attributable to the breach of contract
claim. Schenck v. Ebby Halliday Real Estate, Inc., 803 S.W.2d 361, 369 (Tex. App.-Fort
Worth 1990, no writ); accord Bradbury v. Scott, 788 S.W.2d 31, 40 (Tex. App.-Houston
[1st Dist.] 1989, writ denied). 
8. See Brush v. Reata Oil & Gas Corp., 984 S.W.2d 720, 730 (Tex. App.-Waco 1998,
pet. denied); see also John Chezik Buick Co. v. Friendly Chevrolet Co., 749 S.W.2d 591,
594-95 (Tex. App.-Dallas 1988, writ denied); Narisi v. Legend Diversified Invs., 715
S.W.2d 49, 51-52 (Tex. App.-Dallas 1986, writ ref'd n.r.e.); Johnson v. Hewitt, 539 S.W.2d
239, 240-41 (Tex. Civ. App.-Houston [1st Dist.] 1976, no writ); Joseph v. City of Ranger,
188 S.W.2d 1013, 1014-15 (Tex. Civ. App.-Eastland 1945, writ ref'd w.o.m.).